## FROMHOLTZ *v.* TRIMBLE.

### Opinion delivered October 27, 1919.

ATTORNEY AND CLIENT—FEE—SETTING ASIDE SALE FOR FRAUD.—Appellant was indebted to appellee for an attorney's fee, and, being insolvent, sold a piece of property which he had acquired, thereby rendering appellee's fee uncollectible. *Held*, under the facts, that the sale was fraudulent and was properly set aside.

Appeal from Lonoke Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*O. E. Williams* and *Moore, Smith, Moore & Trieber*, for appellants.

1. Appellees did not by virtue of defending the McGahey suit obtain any attorneys' lien upon the land conveyed to the bank. At the time of the conveyance by Fromholtz to the bank the land was not encumbered by any lien in favor of appellees. Appellees had no attorneys' lien. 208 S. W. 797; 47 Ark. 86.

2. The evidence does not sustain the findings of the chancellor. The conveyance from Fromholtz to Fletcher was not executed for the purpose of fraudulently hindering or delaying appellees in the collection of whatever claim they may have had against Fromholtz. No fraud is shown; the transfer was not voluntary but for a valuable consideration—a pre-existing debt. 60 Ark. 425; 64 *Id.* 184. A person attacking the conveyance must show participation in the fraud on the part of the grantee. 31 Ark. 163; *Ib.* 554.

Mere inadequacy of price, in the absence of fraud is not sufficient. 118 Ark. 229. The finding of the chan-

cellor that there was fraud was against the clear preponderance of the evidence.

3. The chancellor erred in ignoring the fact that the northwest quarter of section 4, township 1 north, range 8 west, was the homestead of Fromholtz and his wife. A creditor can not complain of a voluntary conveyance of the homestead as it can not be fraudulent as to creditors. 118 Ark. 229; 79 *Id.* 215; 103 *Id.* 145. W. P. Fletcher did not confederate in any fraud with Fromholtz and should not be held to have bought the lands as trustee for appellees and part of the land was a homestead of Fromholtz and wife.

*Frauenthal & Johnson* and *Trimble & Trimble,* for appellee.

The deed from Fromholtz to Fletcher, Jr., was fraudulent in fact and law so far as the rights of appellees are concerned and appellees' rights should be protected. 12 R. C. L., p. 545, § 69; 47 Ark. 367; 12 R. C. L. 543, § 68. The evidence shows that the deed was executed to hinder and delay appellees in collecting their fee and was fraudulent. Fletcher occupied a relation of trust and confidence towards Mr. Trimble and the deed was at least constructively fraudulent. 3 Pom. Eq. Jur., § 1077; 21 R. C. L., p. 825, § 10; 3 Pom. Eq. Jur., § 958. W. P. Fletcher, Jr., really represented W. P. Fletcher, Sr., and the Bank of Lonoke and occupied a relation of trust to the appellees, and the decision of the chancellor was correct. *Supra.*

McCULLOCH, C. J. This is an action instituted by appellees to cancel a deed alleged to have been executed in fraud of their rights as creditors of the grantors of certain lands in Lonoke County.

Bernard Fromholtz, one of the appellants, was the owner of two tracts of land in Lonoke County, each containing 320 acres, and he and his wife executed a mortgage to L. W. Monroe to secure a debt, which, at the time of the transactions coming under review in this action, amounted to about eleven thousand dollars. The Bank

of Lonoke, a banking corporation doing business at Lonoke, also one of the appellants, held a mortgage on the land to secure a debt of about twenty-five hundred dollars.

Litigation arose between appellant Fromholtz and certain other parties concerning rights in this property, and appellees, who are attorneys at law, represented Fromholtz in defending the suit, which resulted in a decree of the chancery court dismissing the complaint. Appellees charged a fee which is conceded in the present litigation not to be excessive. That is to say, the concession is made in the briefs of counsel in the presentation of the case here, but Fromholtz testified below that the fee was excessive and that he had not agreed to pay a fee in excess of two hundred and fifty dollars. The dismissal of the complaint in the original action against Fromholtz was without prejudice to the rights of the parties to bring another action at law, but it seems that another action was not instituted.

L. W. Monroe died, and the executors of his estate instituted an action to foreclose the mortgage, and the Bank of Lonoke was joined in the suit as a junior lienor. A decree was rendered foreclosing each of the mortgages, giving priority to the executors of the Monroe estate. One of the tracts of land was sold, by agreement of the parties, to Gus Fulk for a consideration of $10,000, which sum was applied on the debt to the executors of the Monroe estate, leaving a balance of about eleven hundred dollars. The conveyance to Fulk was made by Fromholtz and wife. The other tract was sold by a commissioner under the foreclosure decree and was bid in by W. P. Fletcher as trustee for interested parties.

A written contract had been entered into between Fletcher, as a representative of the Bank of Lonoke, and the executors of the Monroe estate, whereby it was agreed that Fletcher should buy in the property and hold it in trust for sale to the best advantage, and that when sold the proceeds should be applied, first, to the extinguishment of the debt to

the executors, and next, to the debt to the Bank of Lonoke. It does not appear, however, from the evidence, that either of the appellees was advised of the existence of that contract. In fact, the testimony is to the contrary. T. C. Trimble, one of the appellees, attended the sale by the commissioner and raised an objection to the sale. There is a conflict in the testimony as to whether or not he stated the grounds of his objection. He testified that he stated no grounds for his objection, but other witnesses testified that he objected on the ground that the wife of Bernard Fromholtz was not a party to the suit and that her dower was not barred. The commissioner proceeded with the sale notwithstanding the protest, and, as before stated, W. P. Fletcher bid in the property as trustee for interested parties. It does not appear that the sale was ever reported to the court or confirmed.

A short time thereafter Fromholtz and wife conveyed the land by absolute deed to W. P. Fletcher, Jr., who was the cashier of the Bank of Lonoke. The consideration named in the deed was $3,500, and it is shown that the Bank of Lonoke paid the balance of $1,100 to the estate of Monroe, and that the consideration of the deed was to cover that sum and the debt due the Bank of Lonoke. In other words, the evidence shows that the conveyance to W. P. Fletcher, Jr., was for the use and benefit of the Bank of Lonoke, the consideration being the amount of the debt to that institution of Fromholtz, including the amount that the bank had paid in satisfaction of the balance due the Monroe estate.

Appellees had no notice of this conveyance until after it was executed and they claimed that it constituted a fraud on their rights. A short time prior to the date of the commissioner's sale, there was a conference between W. P. Fletcher and T. C. Trimble, one of the appellees, at the former's office in Lonoke, Bernard Fromholtz being also present, in which there was a discussion of the status of the Fromholtz property and the indebtedness of Fromholtz to the Monroe estate and the Bank

of Lonoke and to appellees, and there arose a discussion as to the best means of handling the property so that the rights of all those parties could be secured.

There is a conflict in the testimony as to precisely what occurred in that conference. Trimble testified in substance that Fletcher said that the interested parties, including appellees, entered into a joint arrangement to raise enough money out of a sale of the property to pay all the debts, and that he was given assurance by Fletcher that the interest of all the parties named should be taken care of in the disposition of the property and that means should be devised to that end. He testified that he was left under that impression, which was not removed in any way, or notice given to the contrary, until after the conveyance by Fromholtz to W. P. Fletcher, Jr. Fletcher, on the other hand, testified that he merely conferred with Trimble with a view to getting the interested parties together, recognizing at the time the fact that Fromholtz owed appellees a fee and desiring to see it paid, but he denied that he gave any assurance that appellees would be protected in any subsequent transactions. He testified that Trimble failed to give any response to his proposal that they all go in together and handle the property so that they could all collect their respective debts and leave a balance for Fromholtz. He testified that the only response he got from Trimble was that the latter would "look into the matter" and see what could be done, but the witness stated that nothing further was ever said to him by Trimble concerning the matter and that he felt perfectly free to proceed with the arrangement to protect the rights of the Bank of Lonoke, which he was representing.

The chancellor decided that the transaction constituted a fraud on the rights of appellees and canceled the conveyance in so far as it operated against appellees, but declared a lien on the property in favor of the Bank of Lonoke, and in favor of appellees for the fee claimed, subordinate, however, to the prior lien of the Bank of

Lonoke, and ordered the land sold and the proceeds distributed in accordance with the specified priority.

The ground upon which appellees assert the right to have the conveyance set aside is that the representative of the Bank of Lonoke, in the conference prior to the purchase of the property, led one of them to believe that the interests of appellees would be taken care of in subsequent proceedings, and that, in violation of those rights of appellees, an absolute deed was secured from Fromholtz. The chancellor sustained this contention, and we are of the opinion that the testimony does not preponderate against the finding of the chancellor. It is not difficult to discover from the testimony the fact that appellant Fromholtz was antagonistic to the rights of appellees; and that he was willing to adopt means which would prevent them from collecting their fee for services which they had rendered in the other litigation. It is easy to find in the record ground for canceling the conveyances as fraudulent, so far as he is concerned. Fromholtz was insolvent at the time and had no other property or means out of which the fee could be collected.

It is also clear from the testimony that there was an understanding between Fromholtz and Trimble, acting for the other appellees, that the latter were to get their fee out of the proceeds of the land when sold, and that there were no other means of payment, and it is also clear that the representative of the Bank of Lonoke knew that the only means appellees had of collecting their fee was through the proceeds of the sale of this land.

It is not claimed by Trimble that Fletcher made any positive or express promise that he would buy the lands and handle the same for the benefit of appellees so that they could share with the other creditors, and it can be readily seen by the detailed statement of both of the parties as to what was said in the conference, that a difference of opinion could reasonably arise as to what inference should have been drawn from the statements of the respective parties to each other. It is apparent from Fletcher's subsequent conduct that he did not understand

that he was under obligation to protect the interest of appellee without further request to do so from Trimble, and the testimony does not justify the belief that he intended to violate any obligation in having a conveyance made for the benefit of the Bank of Lonoke, or that he intended to defraud the appellees by procuring that conveyance.

But we can not say that the testimony is insufficient to support the finding of the chancellor that Trimble was fairly justified in drawing an inference from what Fletcher said to him that appellees would be protected in any subsequent transaction concerning the property and that he relied on the implied assurance thus given him. That being true, it constituted a fraud in law for the Bank of Lonoke, through its representative, to accept a conveyance which cut off the rights of appellees to enforce their claim against Fromholtz.

However free from actual fraud Fletcher's intentions may have been, if his conduct was such as to give assurance to Trimble that the latter's rights would be protected, the Bank of Lonoke should not in equity be permitted to hold an advantage gained in violation of those rights. The good faith of Fletcher in placing the wrong estimate on his duty to appellees, following the conference with Trimble in relation to this matter, can not serve to enlarge the rights of the Bank of Lonoke so as to give the bank the right to hold to an advantage improperly gained. The evidence warrants the finding that the lands were worth a sum considerably in excess of the amount of the debt to the Bank of Lonoke, and appellees were, therefore, deprived by this conveyance of the right to enforce their debt against the original equities of Fromholtz in the property.

It is earnestly argued that the fact that Trimble attended the commissioner's sale and protested against it affords the best evidence that he was not relying upon any inducement formerly held out to him that his claim against Fromholtz was to be protected. This does not

necessarily follow, for it appears that Trimble was acting for his clients, the Fromholtzes, in objecting to the sale by the commissioner on account of the fact that Mrs. Fromholtz had not been made a party to the suit. Trimble denied that he stated the grounds of his protest, but that such was in fact the ground. He says that he entered the protest in the interest of his client, Fromholtz, and also because he thought the purchase by Fletcher was intended to be for the benefit of appellees in accordance with the prior agreement, and that he deemed it useless to purchase at a sale which did not bar the dower right of Mrs. Fromholtz. This was not inconsistent with his reliance on the assurance which he said had been given him that he would be protected in the arrangement concerning the handling of the property. In other words, if he was induced to rely upon the promise that the interest of himself and his associates would be protected, and did rely on that promise, then the fact that he attended the sale and made the protest for the reasons stated does not constitute a renunciation of the benefit of the promise nor lessen the effect of his reliance on that promise.

Since the effect of the chancellor's decree is to carry out the original intention of the parties as inferable from their statements at the conference held concerning the disposition of the property, it is a correct solution of the controversy, for any other result would operate as a complete denial of the opportunity of appellees to collect their debt. The decree is, therefore, affirmed.