CHARLES WEATHERLY AND HELEN WEATHERLY v. MASSEY-FERGUSON, INC.

5-4666                               432 S.W. 2d 18

Opinion Delivered October 7, 1968

*Branscum, Schmidt & Mazzanti* for appellants.

*Rieves & Rieves* for appellee.

J. FRED JONES, Justice.    This is an appeal by Charles Weatherly from a decree of the Monroe County Chancery Court setting aside a conveyance of property from Weatherly to his wife as an effort on the part of Weatherly to defraud his creditors.    Massey-Ferguson, Inc. was one of the creditors who was the plaintiff in the trial court and is the appellee here.

The record reveals that prior to September 22, 1962, Charles Weatherly was engaged rather extensively in rice and bean farming.    He owned several items of farm machinery and equipment used in connection with the farm operations, and on that date he entered into a sales contract with Massey-Ferguson for the purchase of a rice combine.    Weatherly took delivery of the combine but defaulted in the payments on its purchase price, so Massey-Ferguson filed suit in circuit court for the balance due on the combine, and judgment by default was entered on February 15, 1965. The combine was sold for $2,100.00 at public sale under the terms of the contract and this amount was credited on the judgment, leaving a balance due in the amount of $8,437.99.    Upon finding that Weatherly had transferred all his property to his wife and did not have sufficient assets in his own name to satisfy the judgment, Ferguson filed the present action in chancery to set aside the sale to Mrs. Weatherly as a fraud on creditors.

The chancellor decreed a cancellation of the conveyance, and the ownership of the property involved, as well as title to machinery purchased and income derived from the farming operations subsequent to the

sale, was decreed to be the property of the appellant Weatherly. We agree with the chancellor.

The badges of fraud are so numerous and plain in this case, we deem it unnecessary to set out all the facts in detail. Appellant purchased the combine on September 22, 1962. One week later on September 29, 1962, he attempted to transfer his interest in all his property *except the combine* to his wife, by signing a bill of sale reciting:

> "That Charles Weatherly sells to Helen Weatherly all of his interest in all property and personal property including cars and trucks and all farming equipment, except one massey-ferguson super 92 combine serial no. *93010562 for the sum of Six Thousand 6000.00 Dollars. 12-1-62—3000.00 Dollars. 12-1-63—3000.00 Dollars."

This bill of sale was not filed for record or recorded until December 16, 1963, but on February 3, 1963, Mrs. Weatherly gave appellant written authority to mortgage all or any of the equipment in obtaining a crop loan for 1963, and on March 3, 1963, appellant did make application and obtained a loan from the Production Credit Association all in his own name and listing seventeen items of farm machinery, including the rice combine in the security agreement. As late as September 14, 1963, appellant furnished appellee with a financial statement in connection with the additional purchase of a used combine (which he now says was for his wife) in which he lists unencumbered assets consisting of farm machinery valued at $9,500.00 and equities valued at $4,300.00 in other farm machinery. In this statement appellant asserted that he had been farming and managing his own farm for ten years, that he did his banking with the Rice Growers Bank at Wheatley, Arkansas, and that his last years income [1962] was $50,000.00.

Additional recitation from the record would only prolong this opinion. Suffice it to say, from the en-

tire record, the only change in appellant's mode of operation prior to the execution of the bill of sale to his wife and thereafter, was that the income from the farming operations was deposited to his wife's bank account upon which he wrote checks with her consent. Notwithstanding his wife's testimony to the effect that he only played pool and gambled, the appellant apparently worked his wife's crops as much as he had worked his own and she paid him nothing for his services.

Ark. Stat. Ann. § 68-1302 (Repl. 1957) provides:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action ... made or construed with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void."

As was said in *Harris* v. *Shaw,* 224 Ark. 154, 272 S.W. 2d 55:

"There are certain circumstances which so frequently attend conveyances or transfers to defraud creditors that they are recognized as badges or indicia of fraud. 37 C.J.S., Fraudulent Conveyances, § 79. One of the most important of these is the insolvency or indebtedness of the transferrer. Others are inadequate or fictitious consideration, retention by the debtor of the property, the pendency or threat of litigation, secrecy or concealment, and the fact that the disputed transactions were conducted in a manner differing from the usual business practice. 24 Am. Jur., Fraudulent Conveyances, §§ 14 and 17; Moore on Fraudulent Conveyances, Vol. 1, p. 222; *Godfrey* v. *Herring,* 74 Ark. 186, 85 S.W. 232; *Fromholtz* v. *Trimble,* 140 Ark. 282, 215 S.W. 623; *Harmon* v. *McSpadden,* 174 Ark. 184, 295 S.W. 353."

The appellant represented himself as the owner of all the machinery, income and other assets of the farming operation when borrowing money or obtaining credit, but he represents himself as being out of the farming business with no property or income except a small pension when called on to pay the judgment he suffered by default.

The decree of the chancellor is affirmed.